May it please the Court, I'd like to reserve five minutes for rebuttal, thank you. My name is Brenda Bannon with Keating Buckland McCormick, representing the appellant Pete Kaa in this matter. We are urging the Court to reverse the District Court order denying summary judgment and to affirmatively enter an order granting Pete Kaa qualified immunity from trial. Prong 2 of the Qualified Immunity Test is at issue on appeal here. I intend to touch on the reasons why the Harlow Court's policy behind granting government officials qualified immunity from suit for their discretionary decision making applies on all fours here. The subordinate supervisor discretionary conduct being castigated by Karl applying the objective Qualified Immunity Analysis and the myriad of layered reasons why Karl has not and cannot satisfy her burden of proof that the constitutional right at issue was clearly established as of the fall of 2008. Government officials should be encouraged to perform their discretionary decision making without fear of being sued. Only the objective conduct is relevant to the Qualified Immunity Test and not the subjective intent of the government official. That was made crystal clear by the Harlow Court in that case evaluating the conduct of a Nixon aide and the allegations that that aide had made statements that the Harlow Court said we will not place judicial resources in evaluating the subjective intent of government officials in performing the discretionary duties. Let me just maybe we can focus you a little bit on the issues at hand here. So if we're only looking on appeal whether or not the law was clearly established. So what is I mean I read your brief and maybe you can crystallize for me what is your position with respect to the state of the law on this particular First Amendment retaliation claim in these kind of circumstances giving testimony in a civil proceeding. What was the state of the law that a reasonable official wouldn't have reasonably understood that to fire somebody in retaliation for giving the kind of testimony that was given here would violate that person's rights. It's important to evaluate the conduct being looked at here. PCA did not fire this employee. PCA supported the chief's decision to transfer the employee. PCA passed on. We're very briefly very briefly. But we're taking all the evidence in light most favorable to the plaintiff. These are the facts alleged by plaintiff. PCA passed forward co-worker adverse employment performance information to the chief. He later used his discretion to put her on a direct training program and he used his discretion to pass on co-worker verbal disputes to his supervisor and send her home. The state of the law. He did this he did this knowing or should have known but let's say knowing for the moment that when somebody is put into that job it's going to take them six to nine months to become truly proficient and surely they won't really be up to speed even for six months whereas he decided he would put a very much more restricted period on her and say you must be up to speed within three weeks or weeks. Yes. So he does that. He did that. And when she couldn't meet those standards he informed the chief that she just wasn't meeting standards and that she also complained about these unfair standards. He decided to pose on her personally. Yes. And he did this allegedly because he wanted to retaliate against her. There are the objective actions of retaliation if you read them as retaliation. Yes. Yes your honor. There's your objective. It's not just in the back of his head. He's not in the back of his head wandering around through the corridors. He's doing things. Right. Yes. Now that is the discretionary conduct. The discretionary decision making of PCA in exercising his discretion as a supervisor. The state of the law. You can't wrap things up in the word discretion and say he can do anything he wants as long as discretionary. Where do you find law that says that? Anything he wants to he can do as long as he calls it discretionary. Exercising his supervisory responsibility in a personnel matter is the quintessential aspect of discretionary decision making as a supervisor. The decision whether to pass forward information or not. The decision whether to put a person on a directed training plan or not. But with respect to the particular question asked by your honor. I think that was the question. Judge Fernandes just put it in context. I mean I didn't complete the whole statement. But Judge. No. What I said. But Judge Fernandes put it in clear perspective. Yes your honor. But looking at what the particular state of the law is with respect to public employee testimonial speech. It was not clear as of the fall of 2008 that private deposition testimony was protected. It was not clear based on the You just shifted to a different point. The point you were making a few moments ago was quite different. Because it's discretionary. He can retaliate all he wants. Because it's discretionary. He can retaliate all he wants. Correct. That is not my argument your honor. I apologize. My argument is because he's making discretionary decisions as a supervisor. We're here in court today to discuss how qualified immunity applies to his discretionary decision making. And it's not enough. We're told specifically by the Supreme Court. It's not enough to look at that conduct at a level of generality. That there is a First Amendment protection against retaliating against speech. We need to look at it at the specific contextual facts that were presented by the particular official here. I think that's what I just tried to suggest to you. He creates a special program designed to cause her to fail and to get her to lose her job. He does that for any person to accomplish it in six months. Knowing all that, he creates a special program that she can't likely, possibly meet. Then one says, well, why did he do it? And you say, you can't ask that question. It's discretionary. He can create, he can say everybody else here gets four months to accomplish X. You have to do it in two weeks. And if you don't, you're out. And that's my discretion as a supervisor. And so you can't do anything about it. Right? That's your argument. That's not my argument. My argument is that before you even get there, you have to assume that the speech is protected. Sure. It wasn't at all clear based on the state of the law in 2008 that the speech in question was protected. Look at the myriad layers of. So you're going off the original thing about his wonderful discretion. Now you want to argue instead, well, that speech wasn't necessarily protected as far as anybody knew. Correct? No. We're talking about two different things. When you're looking at qualified immunity, first you have to get into the even analysis of qualified immunity. You have to first determine what the discretion is that the official is being discussed here is discretionary decision making. Then we look, what is the state of the law in terms of the specific constitutional right that's being addressed? First Amendment speech of a public employee. In this particular case, it's very specific as to deposition testimony in a private forum. Deposition testimony where there is a split in the circuits and no definitive decision by the Ninth Circuit addressing private deposition testimony that is compelled. Sorry to interrupt you, but if they're all compulsory legal proceedings, then isn't that really a distinction without really any meaning? It is not a distinction without any meaning because we are looking to see what a reasonable official would be on notice of. And here we don't have any decisions by the Ninth Circuit addressing deposition testimony, but we do have decisions from the Seventh and Eleventh Circuits addressing deposition testimony coming to different decisions. What has been addressed by the Ninth Circuit has to do with judicial proceedings and administrative proceedings. The court rules and the case law, both federal and state, make it clear that depositions are not either of those. They're not judicial proceedings. They're not the very small audience. When you get back to the conic test regarding content, context, and form, and it tells you you must balance the motivation of the speaker, the size of the audience, and dissemination to the public, to a reasonable official, that might make a difference. Assuming for the moment that it was not at all clear that this speech was protected, then that takes care of retaliation, doesn't it? Retaliation is then out the door, right? If it's not at all clear to the public official that the speech is protected, then there's no reason to think that he's engaging in any retaliation whatsoever. That's not necessarily true. That seems to be a rather confusing point. If it's not protected speech, then the public official can fire her for giving out speech, right? That's exactly right. In fact, there's no patron analysis. So we're out of the retaliation world then, really. It's true. Because it's not a constitutional retaliation question at all. Because the federal courts don't get involved in that level of personnel action when it's not protected speech. So that's why it's a separate issue. And it's further confused to a reasonable official by the fact that in 2003 the Hobbler Court evaluated a confidential administrative assistant employed by a prosecutor's office who had personal disloyalty to the current prosecutor. And that person was terminated. It was not a First Amendment protected issue under the Pickering balancing analysis, but a patronage dismissal. And that was affirmed on appeal. So a reasonable government official could have looked at her status as a confidential employee and believed they could just simply terminate her based on personal disloyalty on the Hobbler decision. I'm going to reserve the remainder of my time for rebuttal. Thank you very much, Your Honor. Your Honors, may it please the Court. We are before the Court here today on a single issue. And that question is whether the law was sufficiently clear that when Assistant Chief Kaa decided to get rid of Martha Carl for her testimony in a federal civil rights deposition, that he violated the First Amendment. Well, it's not that simple, is it? He might have decided that, but as long as he didn't really do it for that reason, it wouldn't violate the First Amendment, right? If he didn't carry through on that threat? What was being confused on the other side, I believe, and it sounds like you're confusing it in the other direction, at least from my standpoint. Maybe I'm just confused. No, that couldn't be. What's confused, of course, the fact that the public official thinks, is really beside the point. If the person does something really stupid that will allow you to get rid of them anyway, that's fine, right? It's not a constitutional violation if the person then goes out and does something really bad. I think what you're getting at is probably the mixed motive test, not healthy. Those aren't issues on appeal, but that is true. If we assume that the speech is protected, that the retaliatory motive is there, but nonetheless the employer would have taken the same action, the same action of defense, then that's true. Those aren't issues on appeal, but that is true. So what you want to address is whether it was clearly established, at least, right? That's correct. I believe that the issue on appeal is whether it was clear as of 2008 that her speech was speech as a matter of public concern and not pursuant to job duties. Those have been the issues as framed by the defense, and that's what we've been responding to. Every day witnesses are subpoenaed to testify. Every day they're expected to tell the truth, whether that testimony takes place in a court or in a deposition. Those people should be able to do so without fear of government retaliation, and specifically public employees should be able to do that without having to decide between telling the truth and losing their jobs. How far should that protection go in a lawsuit? Does it go to document productions and written discovery responses? Does it go to initial disclosures, joint case management statements? How far does that go, or is it only when you're in a deposition or an open court? It could apply to all those things. All those things would be expressions, but what we have here is a witness to facts that occurred in a prior case. So it's not Ms. Carl who was responding to discovery responses in the Wender case. She was a witness in the Wender case. I'm not sure if I answered your question, Your Honor. Yeah, you think it would go to every quote-unquote statement in a legal proceeding. It could. I think those are facts that are outside, beyond the scope of this case, but certainly other forms of expression could protect the speech as well. The two main issues that I do want to focus on are that the law was clearly established that this was speech of a public concern in nature, and that second, that under Garcetti v. Ceballos, that the law was clearly established that when a clerical employee testifies in a civil deposition... That employee gave some testimony in a deposition that was harmful to me or to my boss, and I think she should be removed from her position. But I ought to check the Federal Circuit law to see what I can do about what's out there. What would a reasonable employee find or found back in 2008? Okay, so looking at the content form and context of the speech. So to begin with content, the courts have said that's the most important. Judge Lasnik found in his first order on summary judgment, which we submit as unreviewable on this record, that this was, I can quote the language, she testified about what she had heard and her opinions about the alleged violation of another employee's constitutional rights. In addition, her testimony implicated potential government misconduct because it related to the alleged retaliation against Wender and the alleged conspiracy to deprive him of due process. That is inherently a matter of public concern. That falls square within the type of content the courts have recognized again and again that is protected content, and one could stop the analysis there. But if we look to the case law to specifically answer your question, we have those inherent matters of public concern in terms of content on the one hand, such as Marable v. Nixman. This court decided that complaints to the Washington State Ferry System about corruption in their officials, officials above him, were protected content. At the other end, we have such content as was decided in Thomas v. City of Beaverton. This court decided in 2004 that where the plaintiff there complained about her supervisor's perception of a co-worker's interview performance, and that was deemed also protected content. She had an unstated motive to go against what she perceived to be her supervisor's retaliatory motive, but that was unstated. But the court found particularly important that she was speaking about a co-worker's employment, not her own. So it took it to another level of public concern. All that content is protected. Now if we turn to form and context, which I believe is one of the main issues argued by the defense, and I want to address specifically why the fact that this speech took place in a deposition  First off, we start with the content, that it was inherently a matter of concern. Second, testimony is inherently a matter of concern. In this court, from Alpha Savers in 2004, Robinson v. York 2009, addressing 2005 conduct, and most recently in Claremont v. Sound Mental Health, addressing conduct in 2007, all said that testimony was protected speech. The fact that it took place in a deposition is actually just a reformulation of issues that have been addressed previously by the courts, and that is that goes to audience size or the public versus private nature. And the case that I think is most illustrative in this regard is Rankin v. McPherson. The Supreme Court held in 1987 that a single comment made to a single co-worker, overheard by one other person, was protected form and content. The content of that speech was regarding the assassination attempt on President Reagan, but again, audience size of one, maybe two people, it was a private conversation, protected speech. Similarly, in Thomas v. City of Beaverton, which I mentioned before, the speech was made, a complaint made to a supervisor and a few others, audience size very small. So the case law is clear that just because this speech happened to take place in a deposition, which wasn't one or two people, it was actually more like eight or ten,  also the public versus private nature. Courts have long held that just because an employee doesn't broadcast their speech publicly doesn't somehow mean that it's unprotected. Rankin v. McPherson again said the same thing and cited Baptist-Given, which was decided in the 1970s. And that was a case where a teacher had complaints to a professor, or a teacher could have complained to a principal. And the court there said that our case law, starting with Perry and Pickering and Mount Healthy, all involved public speech, but that fact is largely coincidental. And it went on to find that the private speech involved in that case was protected. How would you square your position with Hufford v. City of Pittsburgh, where the person was testifying to the grand jury about corruption within his employer, but that was considered part of the person's job duties? That's correct, Your Honor. So that's going really to the second main issue. The court did find that that was inherently matters of public concern, so that was not a true issue in the case. The court went on to analyze the job duties, and in that case it was law enforcement professionals, law enforcement officers, and found that under California law, that officers have a duty to testify and a duty to testify in grand jury proceedings, and therefore it's part of their job duties. Here, in contrast, we have a clerical employee whose job description did not include anything about testifying. She had never testified before. But she seems very knowledgeable about the inner workings of her department at very high levels. She does seem to be involved, even if she is a clerical worker. She has access to a lot of high-level information. But the issue under Garcetti is whether or not it was her duty to reveal that information. And in fact, the defense's point of the fact that her job title said confidential, we actually think that cuts the other direction. If her job was to maintain this information as confidential, then revealing it was not part of her job. Most importantly, though, in this case, her speech owed its existence to a subpoena, not her job duties. Garcetti made clear, and citing back to Pickering and Givan before it, that a teacher may be the most knowledgeable citizen to give testimony and to provide information about what's going on in the schools. But if they're not doing that speech pursuant to their job duties, that means that that speech is still protected. And here, again, there's no evidence in the record that Ms. Carl's job duties included testifying. That's not contended by the defense. The only thing that they point to is that she was paid for the day that she was working. But in a multitude of cases that have found that protected speech was not pursuant to job duties, that person was also paid when they were speaking. So that can't be an important factor. Going back to the nature of testimony and depositions, I want to highlight why both testimony is such an inherent matter of public concern, and also why depositions are. Testimony, for at least the last almost hundred years, has been recognized as a public duty. We've cited Blair v. United States, decided in 1919. In particular, compelled testimony is inherently a matter of public concern because it's the auspices of the court, the power of the court that's used to bring someone, sometimes against their will, just as in this case, to come and speak. But the purpose of the depositions... We have considered on two occasions whether or not testimony, compelled testimony, is per se protected. Yes, Your Honor. Each time we've sort of hunted. That's correct. A per se rule would be very helpful, but it is not necessary to dispose of this case. And the reason is, I mean, the per se rule, and some circuits have adopted one. Testimony by its very nature is protected. Other circuits, like this one, have said, no, we still are going to do the analysis, the form, the content, and the context of the speech. Well, we've been told repeatedly that content is the most important factor to consider. That's correct, and Judge Lasnik specifically held that this was reporting of government misconduct, which is clearly in that core zone of speech that's inherently a matter of public concern. Depositions, though, themselves are a matter of public concern. Depositions are a truth-seeking function under the auspices of the court. The power of the court does this, and specifically in a civil rights litigation where litigants are seeking to discover the truth about what government officials did and the details of their misconduct, extremely important. And this is an effective forum for that speech because we're actually having someone speak to people who can do something to rectify the government's misconduct. When you say depositions, you mean compelled depositions? I think the distinction between compelled depositions versus very seldom are there ever voluntary depositions. I can speak from my own experience that I use a subpoena in almost every deposition, Your Honor. Ah, well. But the distinction there wouldn't make a large difference, but I do think that the public policy factors here are even stronger where that deposition testimony is compelled because someone is brought against their will to speak, and they're compelled to tell the truth. So to wrap up, we ask that the court affirm the district court's denial of qualified immunity and remand this case for trial. Thank you, counsel. Let's see, there's a few minutes, almost three minutes for rebuttal. Thank you, Your Honor. The extensive scholarly debate and questions posed by the court this morning demonstrate why qualified immunity applies to Protect My Client. Brousseau instructs us where the facts of the case very much depend on a detailed factual analysis, qualified immunity applies. The recent cases that we cited in our briefing, the Tibbetts case, the Sorrells case, and the Walnut Grove case by this court, where there are multiple layers of factual analysis and balancing and constitutional analysis, those are cases where qualified immunity applies. Tibbetts, the governor, made the wrong call on facts and law regarding the expungement hearing. Nonetheless, he was awarded qualified immunity. In Sorrells, the prison official made the wrong judgment regarding facts and constitutional analysis. But nonetheless, because there was not a case in this circuit at the time controlling, he was afforded qualified immunity. In Walnut Grove, the city officials made the wrong decision on a multiple layer of factual analysis and constitutional law in applying the zoning laws. Nonetheless, because of the complex layers of factual analysis, the government officials were provided qualified immunity. Here, as pointed out by Mr. Schaefer, we have content with multiple layers of factual analysis. We have form with multiple layers of factual analysis. We have context with multiple layers of factual analysis. We have balancing under conic for form and context. We have two steps in the ANG analysis regarding, is this employee when testifying a public member of the employer or a private citizen with factual analysis on multiple layers even to get there regarding the status of the speaker? And then when we're looking at the actual content, we have to look at the record as a whole. We're looking at two different deposition transcripts where Ms. Carl repeatedly said, no, no, no, he wasn't fired because of his speech. He was fired because of misconduct and for lying and trying to destroy evidence. She did have other testimony to provide, but to a reasonable official, could he have made a mistake? Yes, we are not here to overrule the first part of the qualified immunity test. We're here to urge the courts to provide qualified immunity because a reasonable official in Pete Ka's place could have made a reasonable mistake at any, many of the layers of factual and constitutional analysis here. And when we don't have clear controlling authority from this court regarding deposition testimony, and we have two contrary holdings outside of the circuit, we cannot say that the issue is beyond debate as Ashcroft tells us. We cannot say it was such that every reasonable official would have known his conduct was clearly unlawful. Thank you. Your time is up. Thank you very much.
judges: Koh, Fernandez, Paez